### 12188.  BARTLETT v. THE STATE.

BROYLES, C. J.  1.  "Every statutory felony when incorporated in the body of the criminal law, becomes subject to existing regulations as to accessories, indictment, evidence, and procedure.  While certain crimes can only be committed by a particular class of the community, others not of the class may be principals in the second degree, or accessories thereto, since one may assist in a crime which he cannot commit."  *Bishop* v. *State*, 118 *Ga.* 799 (1, 2) (45 S. E. 614).  It follows from the above ruling that the misdemeanor created by the act of 1908 ( Ga. L. 1908, p. 55), and now included in section 668 of the Penal Code of 1910, became subject to the existing rule of law, that in misdemeanors all who participate in the criminal act, either as principals or accessories, are guilty as principals.

(*a*) Section 668 of the Penal Code of 1910 provides that any clerk of the superior court who violates the provisions of section 133 of the Civil

Code of 1910, shall be guilty of a misdemeanor. It follows that any person who aids and assists the clerk in the violation of the provisions of that code-section is likewise guilty of a misdemeanor.

2. Section 133 of the Civil Code of 1910 is as follows: "The returns of the managers, with the tally-sheets, lists of voters and ballots, together with all papers connected with said election [any primary election held by any political party in this State], shall be filed in the office of the clerk of the superior court of the county in which said election is held, within four days after the final declaration of the result thereof. One of the lists of the voters and one of the registration lists with names of those checked or marked as voters shall be exhibited by said clerk to any one desiring to inspect same, but the other documents deposited as aforesaid shall be kept unopened and under seal until the next meeting of the grand jury, to which grand jury one registration list, one list of voters, and the checked registration list above mentioned shall be exhibited; and if no action is taken thereon by the grand jury and no contest has been filed within the time prescribed by the authorities of said party, then all of said election papers shall be destroyed." Under the proper construction of this code-section, it is a violation thereof for a clerk of the superior court to open a ballot-box and examine the ballots therein which were cast in a primary election, the ballots being a part of the returns of the managers of the election and on file in the office of the clerk, whether or not the ballot-box was locked or sealed when the clerk opened the box and inspected the ballots. The fact that the clerk may have violated that provision of the statute which required him to keep the ballots under lock and seal would not excuse him for a violation of both the body and spirit of the statute, which required him to keep the ballots unopened and inviolate from his own, or any other, eyes.

3. Under the foregoing rulings there is no merit in any of the special grounds of the motion for a new trial.

4. The judgment upon the demurrer to the indictment cannot be considered, as the main bill of exceptions contains no assignment of error upon the exceptions pendente lite, which preserved the defendant's exception to the overruling of the demurrer, the assignment of error in the main bill being merely upon the judgment overruling the demurrer, and not upon the exceptions pendente lite themselves (*Ponder* v. *State*, 25 *Ga. App.* 768, 105 S. E. 318), and no assignment of error upon the exceptions pendente lite was made in this court before the case was submitted to the court, and the demurrer was overruled more than twenty days prior to the presentation to the judge of the main bill of exceptions. (See act of August 15, 1921, Ga. L. 1921, p. 233.)

5. There was ample evidence to support the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*

Decided May 11, 1921.

Indictment for unlawful inspection of ballots; from Paulding superior court — Judge Irwin. November 10, 1920.

Application for certiorari was denied by the Supreme Court.

The indictment was against W. L. Denton and A. L. Bartlett, and charged that on September 14, 1918, they "did . . unlawfully and . . intentionally and knowingly open and examine the ballot-box and ballots therein contained of the Dallas voting pre-

cinct, also known as the 1080th district, G. M., precinct of said [Paulding] county, being the ballots and ballot-box cast at the election in said county and precinct and district on the 11th day of September, 1918, known and styled as the State democratic white primary for the nomination of candidates for State-house officers and Governor, Judges of the Supreme Court, Judge Superior [Court] Tallapoosa Circuit, and other State-house officers then to be nominated, and being a part of the documents, papers, and a part of the returns of the managers of said election, made and filed with the Clerk of the Superior Court of said county, the said W. L. Denton being Clerk of the Superior Court of said County and having said ballots and ballot-box on file with him and [in] his office as said clerk, and the said W. L. Denton and A. L. Bartlett then and there did as aforesaid examine the ballots cast at said election precinct,  .  .  and inspect the said ballots, contrary to the laws," etc. Denton pleaded guilty. There was a demurrer to the indictment, on the grounds: (1) that the facts alleged therein do not constitute an offense against the laws of this State; (2) that it is not alleged that the ballot-box and the ballots were sealed; (3) that the allegations show that the defendant Bartlett was neither a clerk of the superior court nor an election manager; and (4) that the statute does not make it penal for any other person than a clerk of the superior court or an election manager to break the seal and examine the ballot box and the ballots of a primary election. The court overruled the demurrer.

On the trial of the defendant Bartlett his codefendant Denton testified: " I was clerk of the superior court here last year. I remember when an election was held in the 1080th district, G. M., Paulding county, known as the Dallas precinct, on September 11, 1918, — State democratic white primary held for the nomination of State-house officers and judges of the superior courts.  .  .  As such the returns were handed to me as clerk of the superior court, filed with me by the managers. The ballot-box was filed with me. When the papers were filed with me they were in the ballot-box; that is, the ballots were just put in the box, and voters' list, tally sheet, and so on was in an envelope. They were fastened with lock and key, — just an ordinary little padlock, I reckon you would call it. Those ballots were afterwards opened, in a day or two after the primary.  .  .  They were opened down in my office. After they

were opened I carried them to Judge Bartlett's house. At that place the ballots were examined. . . As well as I remember (and I guess I remember it about correct), I met Judge Bartlett out about the restaurant here in town, late in the evening. . . As I went in the restaurant judge came out and I met him there, and he touched me on the shoulder, or called me to one side, and asked me — well, just said that he would like to see the returns of this box, or would like to see this box, and I just says, 'I don't know hardly how to go about it.' He said, 'I would like to see for a personal reason.' I says, 'I don't know hardly how to go about it.' He says, 'That is easy.' He says, 'That is all over and can't hurt anybody. Where will you be to-night?' When I told him I didn't hardly know how to go about it, he says, 'That is easy,' and my recollection is I asked him didn't he reckon we had better wait — I had better wait until thirty days expired, and he said couldn't hurt anybody, couldn't any harm come of it, or words to that effect. He says, 'Where will you be to-night?' I told him that my wife had said something about going to church, and [he said] 'You bring all the folks and come down and sit awhile;' and I did so. I come by and got the ballots and took them down, took them out of the box and put them in a shoe-box, and put the box under my arm and went down there and stayed an hour, I reckon, may be an hour and a half. We looked at the ballots, all the ones that voted against him in this district. When I went in . . I laid the box down on the lounge. . . Judge got up and went and picked the box up and come back and sat down by the fire and opened the box, and looked through it, and made a type-written list of all the ones that voted against him. I called the names off for him to write. At the time he never said anything that I remember. He did not ask me what I had in the box when I went in. He told me — said to come by and sit awhile. I carried the ballot-box to his house to look at it, for me and him to look at it." On cross-examination the witness testified that Judge Bartlett did not say to get the ballots and bring them down, but said to come by the office and come down and sit awhile; the witness did not remember whether Judge Bartlett asked if the ballots were sealed; they were not sealed; they were under lock and key, the box was in a vault in the court-house, where all the papers of the clerk were kept, and he (the witness) had the key, and, on his way from his home to Judge Bartlett's house, went in the vault.

unlocked the box and took the ballots out, put them in a shoe-box, took the voters' list that had been opened by the consolidators, put the list in the shoe-box, and took the box to Judge Bartlett's house.

The defendant, in his statement at the trial, said: " I did not open the ballot-box or examine any ballot-box. . . I met Mr. Denton with a number of other people in the restaurant or in Mr. Cooper's store. . . Mr. Denton approached me and his remark was, as I recall it now, that he was in possession of some facts that I would like to know. Of course, my curiosity was aroused, and I asked him what it was, and then he informed me of the information he had there — as he said, of the returns of the election. I then re-marked to him, as I remember it (and he may have misunderstood me, I possibly could have misunderstood him, some of them say oc-casionally that I am hard of hearing. . . ) told him he might get into some trouble about the matter — something said about some trouble about the matter. He said he reckoned not, that they were lying there in the box, open. I asked him were they not closed up, sealed up. He said, ' No,' they were lying there and the box open. Well, as I remember it, there was nothing then to hinder any-body from looking over and seeing what was in the matter, but as to my counselling or commanding him or requesting him to do any-thing with reference to it, I did not do it. It is true, living here, that is not the first time with him, asking him to come down and sit awhile. That night I told him to come down and sit awhile. He made the remark that he had to go by his office. I says to him, ' Just come by, come down and sit awhile.' That ended that upon my part. I thought the matter was ended, left right it was. He came in and had the ballots there. I saw the ballots — I wouldn't say, for I don't know; I suppose they were. I don't think he said — I don't remember, but I know I didn't have anything to do with them. I did not command him or counsel him to do that or anything of the kind, but he gave me the information with reference to one district in the way I have told you. Now that is the whole of the whole mat-ter, so far as I remember it now, and I am quite sure that I re-member it about correct. Now, as I stated, he may have misunder-. stood my language. We were standing there talking, other people were close around; . . don't think there was anybody close enough to hear what we were saying; other people were talking. He could have misunderstood me, I could have misunderstood him,

but I know that I did not in any way command, encourage, counsel, or have anything upon the face of the earth to do with going into that ballot or sorting the ballots."

W. L. Denton was recalled and testified: " I do not think I told Judge Bartlett, when he asked me about coming down, that the ballots were there in the office just lying there in the box, not fastened at all. I told him they were out there in the box, but I would have no occasion to say they were not fastened, when I knew it was locked and I had the key to it, and had the key in my pocket. I think I told him they were locked and I had the key. I wouldn't be positive that I told him they were locked, or that I didn't. I told him they were out there in the box, and in my opinion I told him it was locked and I had the key in my pocket. I wouldn't be positive whether I told Judge Bartlett that they were locked or not."

A statement made by the defendant on a former trial was introduced by the State, in which he said that he met Mr. Denton in the restaurant after the election and something was said with reference to the result of the election, and Mr. Denton said possibly he could find the result of the election, and he (the defendant) asked Mr. Denton if the ballots were not closed up or sealed up, and " he said it was not, that it was lying there in the box, open. . . I think I told him that if they were lying there open and not closed up, that I didn't see why it would be a violation of the law for anybody to do it. I may have said that. I don't remember whether I did that or not, but I know that is as far as I would have gone if I had said that, but I don't think I did. I know there was no intention on my part to tell him to open a closed ballot-box or anything of the kind. . . There was no thought on my part, I repeat, to tell him, or myself, to violate the law." " I thought the matter was at an end, had no thought of anything else, was at home busy. I may have asked him to come down, but I say I had no thought of telling him to do an act that was irregular or a violation of the law."

The court charged the jury in part as follows: " It is a violation of the law to open and examine the ballots and the ballot-box. Every man has a right to have his ballot kept secret, and if you are satisfied, from the evidence in this case, that the defendant counseled, aided, and abetted in any way in opening or examining the ballots

in this case, he would be guilty, if he did that, just as though he had opened the box himself. . . It would not make any difference whether it was sealed or locked; if they were put in the box, nobody has a right to go into that box, whether it is sealed or not. The law requires the managers to seal the box; that is done for the purpose of keeping people from going into it; but the fact that they failed to do their duty and seal the box would not relieve the person from responsibility who goes into that box, whether it is locked or sealed, or whether the box is — if the lid is put on it, then he would be guilty of a violation of the law — and examined that box, then he would be guilty of a violation of the law. . . If the ballot box was closed with a lid on it, [the defendant] would have no right to examine the ballots in the box, even though they were unsealed; that would be a violation of the law." In various grounds of the motion for a new trial the defendant complained of instructions quoted above, and contended that under the terms of the statute the gravamen of the crime is breach of trust on the part of the clerk of the court in whose custody the ballots are left, and none other than those directly named in the statute could violate it, and it did not apply to this defendant; that the statute does not apply to one who merely examines or looks at the ballots after another person has gotten them; that examination of the ballots is not a violation of the law where the box was not broken into or unsealed through the advice and procurement of the defendant; and that there was no evidence that the defendant, directly or indirectly, counseled, or procured, or aided or abetted in the opening of the ballot-box and the taking of the ballots therefrom. It was alleged that the court erred in refusing to charge as follows: "Before you would be authorized to find the defendant guilty, it must appear that the ballot-box in question was closed, sealed, and filed in the office of the clerk of the superior court of this county, and that the defendant counseled, commanded, or procured W. L. Denton to open the seal of the box as charged in the indictment." Refusal to give other requested instructions is also complained of.

*Mundy & Watkins, Bunn & Trawick, C. D. McGregor, C. B. McGarity*, for plaintiff in error.

*J. R. Hutcheson, solicitor-general*, contra.